UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ERIN JENNINGS,

                Plaintiff,                      **AMENDED COMPLAINT AND JURY DEMAND**

    -against-

                                                                       13 Civ. 3589 (PKC)

JOHN JANNARONE;
406 BROOME ST REST INC.; and ALLSTAR
SECURITY AND CONSULTING, INC.

                Defendants.
------------------------------------------------------------x
406 BROOME ST REST INC.,

                Third-Party Plaintiff,

    -against-

ALLSTAR SECURITY AND
CONSULTING, INC.,

                Third-Party Defendant.
------------------------------------------------------------x

        Plaintiff Erin Jennings, by and through her attorneys, Cuti Hecker Wang LLP, for her Amended Complaint alleges as follows:

### THE PARTIES

        1.        Plaintiff Erin Jennings resides in Pennsylvania.

        2.        Defendant John Jannarone ("Jannarone") is an individual who, upon information and belief, resides in New York, New York.

        3.        Defendant 406 Broome St. Rest Inc. ("406 Broome") is a corporation organized under the laws of New York, with its principal place of business located in New York, New York.

4. Defendant Allstar Security and Consulting, Inc. ("Allstar") is a corporation organized under the laws of the State of New York, with its principal place of business located in New York, New York.

## JURISDICTION AND VENUE

5. This action arises under New York law.

6. This Court has jurisdiction under 28 U.S.C. § 1332 because the Plaintiff and Defendants are citizens of different states, and the matter in controversy exceeds the sum of seventy five thousand dollars ($75,000) exclusive of interest and costs.

7. The acts complained of occurred in the Southern District of New York, and venue is lodged in this Court under 28 U.S.C. §§ 1391(b)(1) and/or (b)(2).

## JURY DEMAND

8. Plaintiff hereby demands a trial by jury.

## FACTUAL ALLEGATIONS

9. At all times relevant to this action, Defendant 406 Broome owned, operated, and controlled Southside, a nightclub located at 2 Cleveland Place, in New York's SoHo neighborhood ("Southside" or "the club").

10. At all times relevant to this action, Defendant Allstar contracted to provide security services at Southside.

11. Plaintiff was graduated from Princeton University in May 2012. During 2015, she was working in New York City.

12. On the night of May 16, 2015 – the Saturday of Memorial Day weekend – Ms. Jennings and several friends from college had plans to go out. They ended up at Southside just after midnight on Sunday, May 17, 2015.

13. Prior to May 16, 2015, 406 Broome and Allstar entered into a contract whereby Allstar would provide security and protection services to Southside.

14. During the May 16–17, 2015 shift, several Allstar employees were working at Southside.

15. The duties of Allstar's employees included ensuring the safety of all Southside patrons and ensuring that individuals who appeared to be overly intoxicated, disorderly, and/or abusive were asked to leave the premises and/or escorted out of the club.

16. The entrance to Southside is at street level, and patrons then walk down stairs to the basement level where music is played and alcoholic and other drinks are served.

17. While Ms. Jennings and three of her friends were casually talking near the DJ's booth on the dance floor, Jannarone approached their group.

18. 406 Broome sold liquor and/or other alcoholic beverages to Jannarone on May 16 and May 17, 2015.

19. Employees and/or agents of Allstar were stationed at various locations throughout Southside, including near the bar and on or near the dance floor.

20. Employees and/or agents of 406 Broome were likewise at and around the bar area and the dance floor area.

21. As he approached Plaintiff and her friend, Jannarone was visibly intoxicated. He was slurring his words, his eyes were droopy, and he was waving a drink in his hand.

22. On information and belief, Jannarone was a regular patron of Southside.

23. On information and belief, employees or other agents of Allstar and 406 Broome had seen Jannarone in this visibly intoxicated and unstable state before he approached Ms. Jennings and her friends.

24. Bartenders and other staff employed by 406 Broome, and employees of Allstar, observed Jannarone during the late night of May 16 and early morning of May 17, 2015 and saw that he was drunk and becoming more drunk.

25. Despite Jannarone's visible intoxication, employees or other agents of 406 Broome continued to serve him liquor and/or other alcoholic beverages.

26. Jannarone attempted to speak with Ms. Jennings's female friend, but she could not understand what he was saying because he was slurring his words.

27. Ms. Jennings observed that her friend was uncomfortable by what appeared to be Jannarone's attempts to hit on her friend (who was engaged to another man).

28. Ms. Jennings told Jannarone to leave their group alone, and he walked away.

29. A short while later, Ms. Jennings was standing and chatting with the same female friend in the club.

30. Without any warning or provocation, Jannarone again approached Ms. Jennings and her friend.

31. Though he was visibly intoxicated, no employee or other agent of 406 Broome or of Allstar did anything to stop Jannarone.

32. As he approached Ms. Jennings, Jannarone was holding an object in his hand, which, on information and belief, was a beer bottle.

33. On information and belief, the visibly intoxicated and disorderly Jannarone walked past one or more employees or agents of Allstar and of 406 Broome before Jannarone reached Ms. Jennings's immediate vicinity.

34. Still, no employee or other agent of 406 Broome or of Allstar did anything to stop Jannarone.

4

35. Jannarone then struck Ms. Jennings's head violently and intentionally with the beer bottle he was holding in his hand.

36. Ms. Jennings's friend immediately tried to push Jannarone away, but Jannarone attempted to, or did, strike Ms. Jennings's head again.

37. Still, no employee or other agent of 406 Broome or of Allstar did anything to stop Jannarone.

38. Upon being struck in the head, Ms. Jennings collapsed immediately to the floor.

39. The blow (or blows) caused a large laceration to Ms. Jennings's head, which began to bleed profusely.

40. Ms. Jennings's female friend began screaming, and one of their male companions ran over and tackled Jannarone.

41. Allstar's employees did nothing to restrain Jannarone.

42. Ms. Jennings's female friend quickly realized that Ms. Jennings was seriously injured and needed medical attention.

43. Another male friend carried Ms. Jennings from the floor of the club, up the stairs, and to a cab to take her to the hospital.

44. At or around the time that Ms. Jennings was being taken from Southside to the hospital, one or more employees of 406 Broome escorted Jannarone up the stairs to the door of the club.

45. Jannarone appeared to know one or more of the bouncers by name.

46. At or near the exit to the club, the employee of 406 Broome delivered Jannarone to an employee or agent of Allstar.

47. While Jannarone stood near the club's exit, he pleaded with one or more of the Allstar employees to "protect" him and not "let [him] go to jail."

48. Another friend of Ms. Jennings stayed behind to obtain the phone number of a manager or owner of the club and to seek to ensure that employees or agents of 406 Broome or of Allstar obtained a copy of Jannarone's photo ID.

49. Although 406 Broome's and Allstar's employees were aware that Ms. Jennings had been violently attacked and was bleeding profusely from her head, and that Jannarone was the perpetrator, no employee of 406 Broome or of Allstar notified the police or sought to detain Jannarone.

50. Instead, one or more of Allstar's employees helped Jannarone into a cab.

51. Incidents of violent, abusive, and/or harassing conduct by Southside patrons had occurred earlier on the night of May 16–17, 2015, and, on information and belief, similar violent, abusive, and/or harassing conduct by Southside patrons had occurred on prior occasions.

52. As a result of Jannarone's violent attack on Ms. Jennings, Plaintiff suffered a concussion, a lesion to her head requiring 7 staples, painful bruising on her face, and other serious physical and emotional injuries.

53. Shortly after the attack, Ms. Jennings went to stay with her parents in Pennsylvania and to receive additional medical treatment.

54. Ms. Jennings was unable to return to work for more than a week after the incident.

55. In the months following the incident, Ms. Jennings suffered debilitating headaches, terrible nightmares nightly, and short-term memory loss, among other symptoms.

56. Plaintiff continues to suffer headaches as a result of the attack, including

migraine headaches (which she never had suffered before Jannarone violently struck her head).

57. Plaintiff continues to have disturbing nightmares about the attack.

58. Ms. Jennings suffered excruciating physical pain as a result of Jannarone's physical attack on her.

59. Ms. Jennings suffered substantial emotional distress as a result of Jannarone's physical attack on her.

60. As a result of being attacked on the dance floor at Southside, Ms. Jennings suffers from Post Traumatic Stress Disorder and post-Concussive Syndrome and remains severely distraught by this shocking, traumatic, and senseless attack.

61. 406 Broome's violation of NY G.O.L. § 11-101 contributed to Plaintiff's injuries.

62. 406 Broome's negligence was a proximate cause of Plaintiff's injuries.

63. Allstar's negligence was a proximate cause of Plaintiff's injuries.

64. In connection with his conduct described above, a grand jury sitting in New York County returned an indictment charging Jannarone with criminal assault in the first degree and criminal assault in the second degree. The criminal case against him is pending in the Supreme Court, Criminal Term, New York County.

65. Plaintiff is exempt from the provisions of CPLR § 1601 because, among other things, her claim against Defendant Jannarone requires intentional misconduct and is exempt under CPLR § 1602(5), and her Dram Shop Act claim against 406 Broome requires either knowing/intentional conduct exempt under CPLR § 1602(5) and/or conduct involving reckless disregard for the safety of Plaintiff under CPLR § 1602(7).

7

## FIRST CAUSE OF ACTION
(Battery – New York Common Law, against Jannarone)

66. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

67. Jannarone subjected Erin Jennings to unwanted bodily contact.

68. Jannarone intended to make bodily contact with Ms. Jennings by using a glass bottle to strike Ms. Jennings's head.

69. Ms. Jennings did not consent to Jannarone making any contact with her, and in particular did not consent to Jannarone's forceful use of a glass bottle to strike her head.

70. Jannarone's forceful use of a glass bottle to strike Ms. Jennings's body was offensive.

71. Jannarone's harmful conduct was intentional, malicious, outrageous, or otherwise aggravated beyond mere negligence.

72. As a direct result of Jannarone's unlawful conduct, Plaintiff sustained serious physical injuries and substantial emotional harm.

## SECOND CAUSE OF ACTION
(Negligence – New York Common Law, against 406 Broome)

73. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

74. 406 Broome controlled and operated Southside at all times relevant to this action.

75. While she was a guest in its nightclub, 406 Broome had a duty to protect Plaintiff from reasonably foreseeable criminal acts by third persons such as Jannarone.

76. Jannarone had been a regular at Southside and, on information and belief, employees or other agents of 406 Broome knew that Jannarone was frequently drunk and unruly while at Southside.

77. On the night of May 16 and early morning of May 17, 2015, employees or other agents of 406 Broome observed that Jannarone was intoxicated and harassing other customers.

78. 406 Broome failed to take any steps to prevent Jannarone from getting more intoxicated; indeed, employees or other agents of 406 Broome continued to serve alcohol to the visibly intoxicated Jannarone.

79. 406 Broome failed to take any actions to protect its patron, Plaintiff, from Jannarone.

80. 406 Broome's failure to take steps to protect Plaintiff from Jannarone was a proximate cause of her physical and emotional injuries.

## THIRD CAUSE OF ACTION
(Violation of N.Y. General Obligations Law § 11-101, against 406 Broome)

81. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

82. When he was intoxicated, Jannarone caused serious physical injury and substantial emotional harm to Plaintiff.

83. 406 Broome sold alcoholic beverages to Jannarone on the night of May 16 and/or early morning of May 17, 2015 when he already was visibly intoxicated.

84. 406 Broome unlawfully sold alcohol to Jannarone on the night of May 16 and/or early morning of May 17, 2015.

85. By thus selling alcohol to Jannarone, 406 Broome contributed to Plaintiff's injuries.

86. New York General Obligations Law § 11-101 provides Plaintiff with a cause of action against 406 Broome and entitles her to recover compensatory and exemplary damages.

## FOURTH CAUSE OF ACTION
(Negligence – New York Common Law, against Allstar)

87. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

88. At all times relevant to this action, Allstar contracted to and did provide security services at Southside.

89. While Plaintiff was a guest at Southside, Allstar had a duty to protect Plaintiff from reasonably foreseeable aggressive, assaultive, and/or criminal acts by third persons such as Jannarone.

90. On the night of May 16 and early morning of May 17, 2015, employees or other agents of Allstar observed or should have observed that Jannarone was intoxicated, disorderly, and was harassing other customers.

91. Allstar failed to take any steps to prevent Jannarone from becoming more intoxicated.

92. Allstar failed to take any steps to prevent Jannarone from harassing, threatening, or harming patrons at Southside.

93. Allstar failed to take any actions to protect Plaintiff, a Southside patron whose safety Allstar was obligated to ensure, from Jannarone.

94. Allstar acted in reckless disregard for the safety of Plaintiff.

95. Allstar's failure to take steps to protect Plaintiff from Jannarone was a proximate cause of her physical and emotional injuries.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered against the Defendants as follows:

a. Ordering Defendants to pay compensatory damages in an amount to be determined at trial;

b. Ordering Defendants to pay punitive or exemplary damages in an amount to be determined at trial;

c. Ordering Defendants to pay reasonable attorneys' fees and costs and interest; and

d. Awarding such other and further relief, including all disbursements and pre- and post-judgment interest, as the Court may deem just and proper.

Dated: New York, New York
July 10, 2017

CUTI HECKER WANG LLP

By: s/John R. Cuti
John R. Cuti (JC 3365)

305 Broadway, Suite 607
New York, New York 10007
(212) 620-2600
jcuti@chwllp.com

*Attorney for Plaintiff Erin Jennings*